NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NOVOTEC PHARMA, LLC, | Civ. No. 15-1315 |
| Plaintiff, | |
| | **OPINION** |
| v. | |
| GLYCOBIOSCIENCES, INC., | |
| Defendant. | |

THOMPSON, U.S.D.J.

This matter appears before the Court upon the Motion of Defendant GlycoBioSciences, Inc. to Dismiss the Complaint of Plaintiff Novotec Pharma, LLC. (Doc. No. 13). Plaintiff opposes. (Doc. No. 14). The Court held oral arguments on the Motion on April 16, 2015. (Doc. No. 18). For the reasons stated below, the Court will deny Defendant's Motion to Dismiss.

BACKGROUND

This case involves a pharmaceutical contract dispute between Plaintiff, a New Jersey limited liability company, and Defendant, a Canadian corporation in Ontario.

It appears that in September of 2014 the parties were introduced by third-party David Caskey. Shortly thereafter, the parties began to communicate about the possibility of entering a formal business relationship whereby Plaintiff would distribute in the United States a wound gel developed by Defendant. On September 20, 2014 the parties entered into a Mutual Nondisclosure Agreement ("MNA") that contained a Delaware choice of law provision and granted Delaware federal courts exclusive jurisdiction over the MNA. On October 23, 2014 the parties held their only in-person meeting, with four of Plaintiff's representatives traveling to Defendant's office in Ontario to negotiate a distribution agreement. No agreement was reached

at that meeting, and all other negotiations with respect to the distribution arrangement were conducted by phone or e-mail primarily between Plaintiff's office in New Jersey and Defendant's office in Ontario.  At some point Plaintiff drafted a non-binding Term Sheet, which included language that "the parties shall consent to the jurisdiction of New Jersey," but this provision was subsequently omitted from the distribution agreement ultimately reached by the parties.  (Doc. No. 15, Ex. A).  In addition, Plaintiff required a license from the New Jersey Board of Pharmacy in order to market and distribute the wound gel.  On November 18, 2015 Plaintiff asked Defendant to speak with the Board in order to expedite the licensing process, and Defendant obliged.  Finally on November 26, 2014, the parties executed a Distribution Agreement ("DA"), which is the subject of the present suit.  Unlike the MNA, the DA includes a New Jersey choice of law provision but no forum selection clause.

      The DA grants Plaintiff the exclusive right to market, distribute, and license Defendant's wound gel in the United States.  However, Defendant must arrange for the wound gel's production by a contract manufacturing organization ("CMO").  Allegedly only three CMOs in the world are capable of manufacturing the wound gel: Bioglan (in Sweden), Woodfield Pharmaceutical LLC, and WellSpring Pharmaceutical Corp.  Under the DA, Plaintiff orders batches of the wound gel from Defendant; Defendant arranges for manufacture by a CMO and submits proof of such an order to Plaintiff; then the wound gel batches are shipped to a third party logistics provider ("TPL") chosen by Plaintiff for warehousing and distribution.  The DA required Plaintiff to order a minimum of thirty batches at a specified price over five years, subject to certain conditions and a possible five year renewal.

      Almost immediately after the DA was signed problems arose between the parties. Plaintiff placed an order and paid $203,400 for the first three batches of wound gel on December

1, 2014.  However, Bioglan, the CMO whom Defendant had designated to manufacture the wound gel, allegedly stopped manufacturing the gel because of late payments by Defendant. Defendant's relationship with Bioglan continued to deteriorate, and apparently on December 17, 2014 Bioglan issued a formal letter to Defendant terminating all agreements and commercial relationships except as to the three batches of wound gel ordered by Plaintiff.  According to Plaintiff, Defendant refused to prepay Bioglan to ensure delivery of those three batches and had arranged for Woodfield Distribution LLC, a TPL in Florida, to take possession of the first batch of wound gel.  Plaintiff asserts that Woodfield has also taken possession of Bioglan's second batch and that Defendant has refused to direct Woodfield to release the batches to Plaintiff.  The third batch has not been made yet.  Defendant claims that arrangements for the two batches were established before it entered into the DA.  Plaintiff alleges that it sought to work with Defendant to find another CMO but WellSpring Pharmaceutical refused, given prior litigation with Defendant, and Defendant's relationship with Woodfield Pharmaceutical, an affiliate of Woodfield Distribution, has also deteriorated.  On December 30, 2015 Plaintiff sent Defendant a letter demanding that Defendant allow Plaintiff to pursue orders for the wound gel directly with a CMO.  Defendant seems to have interpreted the letter as a notice terminating the DA.  After the letter was sent, Plaintiff claims that Defendant e-mailed the New Jersey Board of Pharmacy in an attempt to interfere with Plaintiff's license by providing misinformation as to the status of the relationship between the parties.

On February 20, 2015 Plaintiff filed a temporary restraining order ("TRO") and four count complaint against Defendant, asserting breach of contract, declaratory judgment, commercial disparagement, and tortious interference.  (Doc. Nos. 1–2).  The Court granted the TRO on that same day.  (Doc. No. 7).  Thereafter, on March 19, 2015 Defendant filed the present

Motion to Dismiss, asserting lack of personal jurisdiction and *forum non conveniens*.  (Doc. No. 13).  The Court held oral arguments on the Motion on April 16, 2015.  (Doc. No. 18).

## DISCUSSION

A. Legal Standard

When a defendant seeks to dismiss a complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating the facts supporting jurisdiction by a preponderance of the evidence.  *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007); *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992).  The plaintiff cannot rely solely on its bare pleadings and instead must respond with actual proofs, such as sworn affidavits or other evidence.  *Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990).  The court must accept the plaintiff's allegations as true and construe disputed facts in the plaintiff's favor.  *Carrabba v. Morgat*, No. 12-6342 (KM), 2014 WL 229280, at *2 (D.N.J. Jan. 17, 2014) (citing *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)).  If the plaintiff establishes a prima facie case of personal jurisdiction, the burden shifts to the defendant, who must demonstrate a "compelling case" that the exercise of jurisdiction would be unreasonable and unfair.  *O'Connor*, 496 F.3d at 325; *Michael Williams Consulting, LLC v. Wyckoff Heights Med. Ctr.*, No. 09-4328 (PGS), 2010 WL 2674425, at *2 (D.N.J. June 30, 2010).

Personal jurisdiction is appropriate where it is provided for by the state's long-arm statute and satisfies constitutional due process.  *O'Connor*, 496 F.3d at 316; Fed. R. Civ. P. 4(k).  New Jersey's long arm statute grants personal jurisdiction to the full extent permitted by the U.S. Constitution.  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004).  To satisfy constitutional due process, the defendant must have purposefully established sufficient

"minimum contacts" with the forum state and the exercise of jurisdiction over the defendant must comport with "traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 320 (1945)).

There are two types of personal jurisdiction—general and specific. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984). General jurisdiction allows courts to hear all claims against a non-resident corporation where the corporation's affiliations with the state "are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2850–51 (2011). In contrast, specific jurisdiction exists only where "the plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum." *Pinker*, 282 F.3d at 368. Here, Plaintiff argues only that specific jurisdiction exists. For there to be specific jurisdiction that satisfies constitutional due process, the Third Circuit requires: (1) the defendant purposefully directed its activities at the forum state; (2) the litigation arises out of or relates to those forum activities; and (3) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *O'Connor*, 496 F.3d at 317.

In addition to lack of personal jurisdiction, Defendant also claims that Plaintiff's case should be dismissed under the doctrine of *forum non conveniens*. "The forum non conveniens determination is committed to the sound discretion of the trial court," but "a plaintiff's choice of forum should rarely be disturbed." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 257 (1981). The district court may, in its discretion, dismiss the case only where "an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or

5

when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." *Windt v. Qwest Commc'ns Int'l., Inc.*, 529 F.3d 183, 189 (3d Cir. 2008). Thus, in evaluating a motion to dismiss on *forum non conveniens* grounds, the court first determines whether an adequate alternative forum exists, then determines the amount of deference to be given to the plaintiff's choice of forum, and lastly balances the public and private interest factors that weigh in favor of one forum or another. *See Tech. Dev. Co. v. Onischenko*, 174 F. App'x 117, 120 (3d Cir. 2006). "The defendant bears the burden of persuasion as to all elements of the forum non conveniens analysis." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991) ("*Lacey I*").

    B. Analysis

        i.     *Specific Jurisdiction*

Under *O'Connor*, the first step of assessing specific jurisdiction is to determine whether the defendant purposefully directed activities toward the forum state. 496 F.3d at 317. For contract claims, courts examine the totality of circumstances. *Telecordia Tech Inc. v. Telkom SA, Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006). Simply entering into a contract with a party in the forum state is insufficient to establish minimum contacts. *Burger King*, 471 U.S. at 478. Instead, the court must examine "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether the defendant purposefully established minimum contacts with the forum state. *Id*. at 479. In addition, the court must consider whether the defendant's "contacts with the forum were instrumental in either the formation or the breach of the contract." *Control Screening, LLC v. Tech. Application & Prod. Co. (Tecapro), HDMC-Vietnam*, 687 F.3d 163, 167 (3d Cir. 2012).

Here Defendant argues that specific jurisdiction is lacking because it has not purposefully established sufficient minimum contacts with New Jersey, and subjecting it to the Court's jurisdiction would not comport with traditional notions of fair play and substantial justice. Specifically, Defendant explains that the DA was an arms-length transaction in which Defendant specifically minimized its contacts with New Jersey. Defendant did not seek out Plaintiff or any other New Jersey distributor; instead, the parties were introduced by a third party. In negotiating the contract, Defendant never entered New Jersey; rather, it was Plaintiff that made a trip to Defendant's office in Ontario. All other negotiations were conducted by telephone and e-mail. Moreover, the contract terms do not require Defendant to engage in any activities in New Jersey. Defendant merely receives orders from Plaintiff and then, from Ontario, arranges for the wound gel's manufacture by a CMO outside of New Jersey. After production, it is Plaintiff's responsibility to arrange for the wound gel's shipment from the CMO to the TPL for distribution.

Additionally, Defendant argues that the Delaware forum selection clause in the MNA and the removal of the New Jersey forum selection clause in the non-binding Term Sheet demonstrate Defendant's unwillingness to establish minimum contacts and personal jurisdiction in New Jersey. Defendant also highlights the short duration of the parties' relationship: they were introduced in September 2014, signed the DA on November 26, 2014, and possibly terminated their relationship on December 20, 2014. To the extent that Defendant breached its contractual obligations it did so in Ontario, not New Jersey. Lastly, Defendant explains that its contacts with the New Jersey Board of Pharmacy were induced by Plaintiff, who asked Defendant to speak with the Board in order to expedite Plaintiff's license. After the parties' relationship soured, Defendant claims it reached out to the Board by e-mail merely to provide an update on the status of the parties' contract.

In response, Plaintiff asserts that Defendant has purposefully established minimum contacts with New Jersey because Defendant communicated and negotiated with Plaintiff, a New Jersey company, to enter into a long-term five-year contract in which significant elements of the contract would be performed in New Jersey, and Defendant communicated with a New Jersey regulatory agency regarding the parties' contractual relationship.  The DA contains a New Jersey choice of law clause and provides that the nationwide distribution and marketing of Defendant's wound gel would be coordinated by Plaintiff in New Jersey.  And the DA required Defendant to maintain continuous communications with and support of Plaintiff: Defendant was obligated to "support [Plaintiff] by providing all non-confidential information relevant to the manufacture, distribution, marketing and sales of the Product," to "maintain Comprehensive General Liability Insurance . . . nam[ing Plaintiff] as an additional named insured," to supply Plaintiff with proof of a manufacturing order with a CMO, and to forward to Plaintiff "all quality related communications from the CMO in a timely fashion."  (Doc. No. 14, Ex. B., Art. 3.2–3.3, 3.6, 8.2).  Finally, Plaintiff points to Defendant's two affirmative contacts with the New Jersey Board of Pharmacy: first to expedite Plaintiff's license, and second to allegedly interfere with Plaintiff's registration as a Pharmaceutical and Medical Device Wholesaler.

Considering all relevant facts on the record, the issue of minimum contacts is admittedly a close one.  However, the Court ultimately agrees with Plaintiff that Defendant has purposefully established sufficient minimum contacts with New Jersey.  A forum selection clause alone is not enough to confer personal jurisdiction over a non-resident defendant, but it can be considered with other factors to support jurisdiction.  *See Burger King*, 471 U.S. at 482; *Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008).  And the mere existence of phone calls and e-mails by an out-of-state defendant into the forum state is also insufficient.  *See Michael Williams*, 2010

WL 2674425, at *4, 6 (collecting cases).  But where these electronic or wire communications are solicitous, extended over a period of time, or combined with other facts demonstrating intentional contact with the forum state, they may become sufficient to establish purposeful availment.[1]  *See O'Connor*, 496 F.3d at 315–16 (finding personal jurisdiction over the defendant, a Barbados hotel that mailed seasonal newsletters and spa brochures to the Pennsylvania plaintiff who stayed at the hotel and slipped at the spa); *Control Screening*, 687 F.3d at 168 (finding personal jurisdiction where, in addition to e-mails, fax, and Skype conversations, the parties had a four year contractual relationship whereby the defendant would be the exclusive distributor in Vietnam of the plaintiff's scanner, which was manufactured and assembled in New Jersey); *Carrabba*, 2014 WL 229280 at *6–7 (finding personal jurisdiction over an Arizona defendant who contacted the New Jersey plaintiff at least ten times by phone and e-mail about the possibility of purchasing a dog from plaintiff, a dog breeder); *Lebel v. Everglades Marina, Inc.*, 115 N.J. 317 (1989) (finding personal jurisdiction over a Florida defendant who solicited the New Jersey plaintiff by phone twenty times in two years and knew that the boat defendant was selling was destined for New Jersey).  Here, the court finds sufficient deliberate minimum contacts by Defendant through the combination of (1) the New Jersey forum selection clause, (2) the multiple phone calls and e-mails to Plaintiff's New Jersey office to negotiate the contract, and (3) the significant future consequences of the contract, namely the fact that the DA

---

[1] Indeed, there is some indication that a single electronic communication into the forum state may confer personal jurisdiction if the communication itself is actionable.  *Carrabba*, 2014 WL 229280 at *5 ("a single email exchange might be enough to support jurisdiction if that very communication gave rise to the cause of action"); *see also Carteret*, 954 F.2d at 146–47 (stating that personal jurisdiction is permitted where a non-resident defendant travels to the forum state and makes a tortious misrepresentation while there); *Lebel*, 115 N.J. at 326 (finding personal jurisdiction where phone calls and the mailing of a sales agreement were the defendant's only transactional contacts with New Jersey, but these calls contained alleged misrepresentations by the defendant that gave rise to the plaintiff's fraud claim).

9

established a five-year, approximately $2 million[2] relationship between the parties whereby the marketing and distribution efforts for Defendant's wound gel would be coordinated from New Jersey.

Furthermore, the most analogous case to the facts at hand seems to be *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476 (3d Cir. 1993). In that case, defendants in Spain allegedly entered into a contract to sell to a Pennsylvania plaintiff the rights to distribute in the United States and Canada 450 foreign films. *Id*. at 478–79. The parties had only one in-person meeting—in California—to negotiate the contract. *Id*. The remaining discussions occurred through numerous phone calls and telexes to the plaintiff's Pennsylvania office. *Id*. at 479–80. The ongoing contract negotiations and communications between the parties lasted at least four months. *Id*. at 484. Thereafter, the plaintiff sued the defendants in a federal district court in Pennsylvania, alleging breach of contract and fraud when defendants failed to deliver the film rights, and it was discovered that the defendants lacked some of the rights they had claimed. *Id*. at 478. The Spanish defendants challenged personal jurisdiction, and the Third Circuit affirmed the district court's exercise of personal jurisdiction, finding purposeful minimum contacts with the forum because the defendants "directed at least twelve communications to the [Pennsylvania] forum," and "engaged in negotiations for an agreement that would have created rights and obligations among the citizens of the forum and contemplated significant ties with the forum." *Id*. at 482–83.

---

[2] The DA requires Plaintiff to order at least thirty batches of Defendant's wound gel at specified, increasing over time prices over five years. (Doc. No. 14, Ex. B, Art. 4.1, 6.4). Plaintiff ordered three batches of the wound gel and paid $203,400. Thus, multiplying this amount by ten to reach the thirty batch minimum yields roughly $2 million. However, if a generic enters the market, the required minimum batches will be halved and the price will be decreased. (*Id*. at Art. 4.5, 6.5).

Similarly, here the parties entered into a substantial nationwide distribution contract after a single in-person meeting conducted outside the forum state, with most negotiations occurring over phone or e-mail to Plaintiff's office located in the forum state. And Defendant's contact with Plaintiff also lasted at least four months, from September 2014 to the end of December 2014. Like the distribution contract in *Grand Entertainment*, the DA "create[s] rights and obligations" in Plaintiff, a citizen of the forum, and "contemplate[s] significant ties with the forum." *Id*. Therefore, the Court finds that Defendant purposefully directed its activities at New Jersey and established sufficient minimum contacts with the state. The first step of the three-part *O'Connor* framework is satisfied. 496 F.3d at 317.

The second prong of the *O'Connor* analysis is whether the plaintiff's cause of action arises out of the defendant's forum related activities. *Id*. Here Plaintiff has not identified any contacts with New Jersey besides those associated with Plaintiff's contract and tort causes of action. Therefore, since the first requirement of purposeful availment has been satisfied, the second requirement is also satisfied. *See Budget Blinds*, 536 F.3d at 265.

The final step of the *O'Connor* framework demands an assessment of whether the court's exercise of personal jurisdiction would comport with traditional notions of fair play and substantial justice. 496 F.3d at 317. Once sufficient minimum contacts have been demonstrated, "jurisdiction is presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id*. at 324 (quoting *Burger King*, 471 U.S. at 477). Factors to consider include: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, [and] the inter[national] judicial system's interest in obtaining the most efficient resolution of controversies." *Burger King*, 471 U.S. at 477.

Here, Defendant's primary argument for unreasonableness is its small size, which, it argues, makes litigating in a foreign forum a tremendous burden. Defendant claims to have only two employees, plus an outside director and an outside regulatory consultant. (Doc. No. 15, Drizen Reply Cert., at ¶ 30). However, the Court notes that Defendant agreed to submit to the (exclusive) jurisdiction of a Delaware federal district court under the MNA, and litigating in a New Jersey federal court does not seem more burdensome than litigating in a Delaware federal court. And it seems that Defendant has experience litigating in the United States because Defendant has been involved in nine lawsuits in the United States in the past four years. (Doc. No. 14 at 16, n. 5; Doc. No. 15 at 10, n. 3). Furthermore, New Jersey's interest in protecting its citizens' contractual and tort rights and Plaintiff's interest in adjudicating in a convenient forum further support the reasonableness of personal jurisdiction here. Defendant has not shown a "compelling case" that exercising personal jurisdiction would be unreasonable and unfair. *O'Connor*, 496 F.3d at 324; *see also Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir. 1998) (stating that only in "rare cases" will jurisdiction be unreasonable despite the presence of minimum contacts). Therefore, exercising personal jurisdiction over Defendant satisfies the last *O'Connor* requirement and comports with fair play and substantial justice.

    ii.    *Forum Non Conveniens*

In addition to lack of jurisdiction, Defendant also argues that the case must be dismissed based on *forum non conveniens*. Plaintiff concedes that Canada is an adequate alternative forum for adjudicating the dispute. (Doc. No. 14 at 18). Thus, the court will proceed to assess the amount of deference to give to plaintiff's choice of forum and then balance the public and private interest factors to determine whether the plaintiff's chosen forum would create "oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience" and whether "the

chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." *Windt*, 529 F.3d at 189; *see also Chigurupati v. Zenotech*, 480 F. App'x 672, 674 (3d Cir. 2012). Private interest factors include relative access to evidence, availability of compulsory process for attendance of unwilling witnesses, cost of attendance for willing witnesses, and other practical considerations that make trial easy, expeditious, and inexpensive. *Windt*, 529 F.3d at 189. Public interest factors include administrative difficulties stemming from court congestion, the interest in having local disputes resolved at home, avoiding the application of foreign law, the interest in trying diversity cases in a forum at home with the governing law of the case, and avoiding the burdening of jurors with cases that have no impact on their community. *Id*. Lastly, it is worth noting that *forum non conveniens* should be "sparingly applied" because "its application results in the dismissal of an action over which the court has jurisdiction and ordinarily would have a duty to resolve." *Tech. Dev. Co., Ltd. v. Onischenko*, 536 F. Supp. 2d 511, 517 (D.N.J. 2007) (internal citations omitted).

Here, Plaintiff's choice of forum deserves substantial deference because Plaintiff, a New Jersey LLC, has chosen to bring this action in its home forum, presumably out of convenience. *See Windt*, 529 F.3d at 190; *Piper Aircraft*, 454 U.S. at 255–56. And an examination of the public and private interest factors fails to demonstrate that litigation in New Jersey would be oppressive and unfair to Defendant "out of all proportion to plaintiff's convenience." *Piper Aircraft*, 454 U.S. at 242.

Several private interest factors support Plaintiff's chosen forum. With respect to ease of access to sources of proof, Defendant argues that all its witnesses and evidence remain in Canada, while Plaintiff argues that its witnesses and evidence are in New Jersey. Since most of the relevant evidence of both parties would seem to be documentary evidence that is relatively

13

easy to access given modern technological advancements, this factor weighs in plaintiff's favor. *See Football Partners, LLC v. Football Ass'n of Ireland*, No. 11-5227 (MLC), 2012 WL 2995199, at *7 (D.N.J. July 23, 2012). As to costs, it seems that Defendant has only two employees whereas Plaintiff has four that were involved in negotiating the DA; thus this factor also supports Plaintiff's forum, although the Court acknowledges that Plaintiff's comparatively larger size likely means Plaintiff would be more able to shoulder such costs.[3] In addition, relevant third parties such as the New Jersey Board of Pharmacy are beyond the reach of Canada's compulsory process, which further supports jurisdiction in New Jersey. Thus, the private interest factors seem to favor Plaintiff's chosen forum, or at the very least are equally balanced between the parties, which would still tip in favor of retaining jurisdiction. *See Windt*, 529 F.3d at 194–95 ("When the district court found the private interest factors to be at equipoise . . . it should have concluded that they weighed in favor of retaining jurisdiction, not that they tipped toward dismissal.") (internal citations and quotation marks omitted).

The public interest factors also weigh in Plaintiff's favor. First, the parties agree that New Jersey law governs; thus, trying the case in New Jersey rather than Canada would preserve the interests in both avoiding application of foreign law and litigating in a forum at home with the governing law. Second, the interests of settling disputes locally and not burdening jurors with cases that do not impact their community also seem to support Plaintiff. The dispute between the parties involves a contract in which a wound gel would be marketed and distributed in the United States. Plaintiff apparently had arranged to bring on additional employees in New Jersey to fulfill its contractual obligations, and when the relationship between the parties soured,

---

[3] As stated above, Defendant's claim that litigating in New Jersey would be tremendously burdensome is belied by the fact that Defendant agreed to litigate in Delaware under the MNA and the fact that Defendant seems to have extensive prior experience litigating in U.S. courts.

Defendant allegedly interfered with Plaintiff's New Jersey license. Thus, even though Defendant allegedly breached the DA and engaged in tortious conduct from afar in Canada, the effects of such actions are felt primarily in New Jersey and in the United States, not Canada. *See Windt v. Qwest Commc'ns Int'l, Inc.*, 544 F. Supp. 2d 409, 423–24 (D.N.J. 2008) ("The interest of having disputes settled locally and avoiding burdening jurors with cases that have no impact on their community focuses on the effect that the resolution of the case would have on the *local* community, its citizenry, its domestic financial markets, and so on."). Accordingly, the interest in local resolution of disputes favors Plaintiff's forum. Lastly, with respect to administrative burden, Defendant argues that the District of New Jersey is one of the busiest districts in the United States. (Doc. No. 15 at 15, n. 8). However, while court congestion may provide some support for Defendant's chosen forum, this factor alone does not outweigh the remaining factors, which point in favor of Plaintiff's chosen forum. In sum, Defendant has not established that litigating in New Jersey would be "oppressive[] and vexatio[us] . . . out of all proportion to plaintiff's convenience." *Piper*, 454 U.S. at 242. Therefore, dismissal based on *forum non conveniens* is not warranted.

## CONCLUSION

For the reasons above, Defendant's Motion to Dismiss based on lack of personal jurisdiction and *forum non conveniens* will be denied. A corresponding Order follows.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.